## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE PROTECT DEMOCRACY PROJECT, INC., | ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| U.S. DEPARTMENT OF HOMELAND SECURITY; FEDERAL EMERGENCY MANAGEMENT AGENCY; and THE OFFICE OF MANAGEMENT AND BUDGET, | ) ) ) ) ) ) |
| Defendants. | ) ) ) ) ) ) ) |

Civil Action No. 17-2440

## **COMPLAINT**

1.      Plaintiff The Protect Democracy Project, Inc. ("Protect Democracy") brings this action against Defendants U.S. Department of Homeland Security ("DHS"), Federal Emergency Management Agency ("FEMA"), and Office of Management and Budget ("OMB") to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff alleges as follows:

2.      The open exchange of truthful information is a touchstone of a functioning democracy. The ability of ordinary citizens to make informed decisions about politicians and policy, to participate in robust public discourse, and to hold elected leaders accountable requires a baseline agreement about fundamental facts and the terms of debate.

3.      The proliferation of any misinformation by elected officials, whether purposeful or not, poses a danger to American democracy and its bedrock principle of government by the

people, for the people. So too, government suppression of critical, accurate information poses a substantial threat to a democracy. Anti-democratic regimes thrive on the obfuscation of truth by those in power, seeking to sow confusion amongst the public and curry favor through manipulated perception rather than objective fact.

4.     Numerous news outlets have identified substantial degrees of misinformation in public statements by the current administration, and by President Trump in particular. For example, the *New York Times* documented "a steady stream of falsehoods" by President Donald Trump in his first 100 days in office and "logged at least one false or misleading claim per day on 91 of his first 99 days." Linda Qiu, Fact-Checking President Trump Through His First 100 Days, N.Y. Times, Apr. 27, 2017, *available at* https://www.nytimes.com/2017/04/29/us/ politics/fact-checking-president-trump-through-his-first-100-days.html. The *Washington Post* Fact Checker referred to President Donald Trump as "the most fact-challenged politician that [it] has ever encountered," averaging 4.6 false or misleading claims a day in his first six months in office. Glenn Kessler, Michelle Ye Hee Lee & Meg Kelly, President Trump's First Six Months: The Fact-Check Tally, Wash. Post, July 20, 2017, *available at* https://www.washingtonpost.com/ news/fact-checker/wp/2017/07/20/president-trumps-first-six-months-the-fact-check- tally/?utm_term=.6e996e2eaa5c. In this context, the *Wall Street Journal*'s Editorial Board cautioned that "Trump's falsehoods are eroding public trust, at home and abroad" and doing "damage . . . to his Presidency with his seemingly endless stream of exaggerations, evidence-free accusations, implausible denials and other falsehoods." Editorial, A President's Credibility, Wall St. J., Mar. 21, 2017, *available at* https://www.wsj.com/articles/a-presidents-credibility- 1490138920?mg=prod/accounts-wsj. In the run up to the election, The *Economist* noted that "Mr Trump is the leading exponent of 'post-truth' politics—a reliance on assertions that 'feel true'

but have no basis in fact." Leaders, Post-truth Politics—Art of the Lie, Economist, Sept. 10, 2016, *available at* https://www.economist.com/news/leaders/21706525-politicians-have-always-lied-does-it-matter-if-they-leave-truth-behind-entirely-art.

5.      As set forth in more detail below, shortly after President Trump's visit to Puerto Rico last month, key information regarding access to drinking water and electricity in Puerto Rico was removed from FEMA's website. It is critical to the effectiveness of DHS and FEMA, and to the American people's confidence in the federal government—particularly in times of crisis—that the federal government both rely on and disseminate accurate information about ongoing natural and humanitarian disasters. Only after public reporting of the selective removal of data—and advocacy from Protect Demoracy and others—was the information returned to FEMA's website. Protect Democracy seeks to compel the release of documents concerning who directed the removal of this critical information, and why.

6.      Hiding unflattering data about the government is how authoritarian leaders in other countries keep citizens in the dark and undermine their ability to hold those regimes accountable. The American public needs to know why FEMA sought to hide crucial statistics during such a critical time.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

8.      Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

9.      Plaintiff Protect Democracy is an organization with 501(c)(3) status, incorporated under the laws of the District of Columbia, and headquartered at 2020 Pennsylvania Avenue, NW, #163, Washington, DC 20006. Plaintiff's mission is to protect our democracy from

descending into a more autocratic form of government by preventing those in power from

depriving Americans of a free, fair, and fully-informed opportunity to exercise ultimate

sovereignty. As part of this mission, Plaintiff seeks to inform public understanding of operations

and activities of the government by gathering and disseminating information that is likely to

contribute significantly to the public understanding of executive branch operations and activities.

Plaintiff regularly requests such information pursuant to FOIA. Plaintiff intends to give the

public access to documents transmitted via FOIA on its website, www.protectdemocracy.org,

and to provide information about and analysis of those documents as appropriate.

10.     Defendant DHS is an agency of the executive branch of the federal government of

the United States. Defendant is headquartered at 245 Murray Lane SW, Washington, DC 20528.

Defendant has possession, custody, or control of the documents that Plaintiff seeks in response to

its FOIA request.

11.     Defendant FEMA is an agency of DHS. Defendant is headquartered at 500 C

Street SW, Washington, DC 20472. Defendant has possession, custody, or control of the

documents that Plaintiff seeks in response to its FOIA request.

12.     Defendant OMB is a component of the Executive Office of the President of the

United States. Defendant is headquartered at 725 17th Street NW, Washington, DC 20503.

Defendant has possession, custody, or control of the documents that Plaintiff seeks in response to

its FOIA request.

## STATEMENT OF FACTS

13.     In the days and weeks after Hurricane Maria made landfall in Puerto Rico,

President Trump and members of his administration made numerous positive statements about

recovery efforts on the island. For example, Acting Homeland Security Secretary Elaine Duke

told reporters that she was "very satisfied" with the government's response in Puerto Rico,

stating: "I know it is really a good news story in terms of our ability to reach people and the limited number of deaths that have taken place in such a devastating hurricane." Jeremy Diamond, *Trump Administration Projects Confidence Amid Puerto Rico Crisis*, CNN, Sept. 28, 2017, *available at* http://www.cnn.com/2017/09/28/politics/elaine-duke-puerto-rico-response/index.html.

14.     On October 1, 2017, President Trump tweeted that "all buildings" in Puerto Rico had been "inspected for safety." Donald J. Trump (@realDonaldTrump), Twitter (Oct. 1, 2017, 5:26 a.m.), https://twitter.com/realDonaldTrump/status/914466534365569025. That day, the governor of Puerto Rico told CNN that he was not aware of any inspections, and that, in fact, there were areas of Puerto Rico "where we haven't really gotten contact." Brian Stelter (@brianstelter), Twitter (Oct. 1, 2017, 6:45 a.m.), https://twitter.com/brianstelter/status/914486337734168577. During a visit to Puerto Rico in early October, President Trump told hurricane survivors, "Flashlights? You don't need 'em anymore. You don't need 'em." Jacqueline Thomsen, *Trump Hands Out Supplies During Puerto Rico Visit*, The Hill, Oct. 3, 2017, *available at* http://thehill.com/homenews/administration/353689-trump-tells-puerto-ricans-they-dont-need-flashlights-while-most-of. At that time, more than ninety percent of the island remained without electricity.

15.     During the same visit, President Trump stated that, "It's now acknowledged what a great job we've done," and explained that although recovery efforts in Puerto Rico had "thrown our budget a little out of whack," it was "fine because we've saved a lot of lives." After hearing that the official death count stood at sixteen, he stated that, "Everybody . . . can really be very proud of what's taken place in Puerto Rico." Amanda Holpuch and Oliver Laughland, *Puerto Rico: Trump Appears to Complain About Cost of Relief Effort*, Oct. 4, 2017, The Guardian,

65701553_3

*available at* https://www.theguardian.com/world/2017/oct/03/puerto-rico-donald-trump-visit-hurricane-maria. At that time, federal aid was reportedly just reaching communities outside of city centers, with some communities reporting that they had yet to see any outside help at all. *See, e.g.*, AJ Vicens, In Puerto Rico's Cabo Rojo, a Dialysis Patient Waits for Help, and a Mayor Waits for Power, Mother Jones, Oct. 3, 2017, *available at* http://www.motherjones.com/politics/2017/10/in-puerto-ricos-cabo-rojo-a-dialysis-patient-waits-for-help-and-a-mayor-waits-for-power/; Molly Hennessy-Fiske and Laura King, Trump praises hurricane relief efforts in Puerto Rico amid criticism of a slow response, L.A. Times, Oct. 3, 2017, *available at* http://www.latimes.com/nation/la-na-puerto-rico-trump-20171003-story.html. As of this filing, reports indicate that there may be hundreds of hurricane-related deaths. Amulya Shankar, Real death toll in Puerto Rico is probably 450—much higher than official count, USA Today, Oct. 18, 2017, *available at* https://www.usatoday.com/story/news/world/2017/10/18/real-death-toll-puerto-rico-probably-450-much-higher-than-official-count/774918001/. *See also* Jillian Jorgensen, Puerto Rico Deaths Spike after Maria, Raising Questions Over Uncounted Hurricane Deaths, N.Y. Daily News, Nov. 10, 2017, *available at* http://www.nydailynews.com/news/national/deaths-spike-puerto-rico-question-maria-death-toll-article-1.3624592.

16.     On October 5, 2017, the *Washington Post* reported that FEMA had that day removed from its website key metrics regarding access to drinking water and electricity in Puerto Rico, even as it maintained other metrics suggesting improvement in the situation on the ground. Jenna Johnson, FEMA Removes—Then Restores—Statistics About Drinking Water Access and Electricity in Puerto Rico from Website, Wash. Post, Oct. 6, 2017, *available at* https://www.washingtonpost.com/news/post-politics/wp/2017/10/05/fema-removes-statistics-about-drinking-water-access-and-electricity-in-puerto-rico-from-website/?utm_term=

.994baad9975b.

17.     On October 6, 2017, Protect Democracy sent FEMA Administrator William B. Long a letter expressing deep concern about the removal of the water and electricity metrics, and requesting that FEMA immediately restore the removed information. Exhibit H.

18.     Also on October 6, 2017, Plaintiff sent to Defendant FEMA the FOIA request that is the subject of this litigation, which is described in more detail below. Shortly thereafter, FEMA once again began including data on its website regarding the percentage of Puerto Ricans who have access to drinking water and the percentage of the island that has power.

19.     FEMA has not provided any explanation for the temporary, selective removal of the referenced metrics. The reason for the removal matters: was this just an error? Or, in keeping with President Trump's statements about the state of Puerto Rico's recovery, was the removal an attempt to hide information that reflects poorly on FEMA and the federal government generally? And if so, who directed that this information be suppressed?  Hiding or suppressing information about a matter of utmost public concern is conduct typical of an autocratic regime, and it has no place in American democracy. If employees at FEMA were directed to remove information from the FEMA website, it is critical to know where that order came from, and on what basis that order was given.

20.     To that end, on October 6, 2017, Plaintiff sent a FOIA request to each Defendant requesting the following records for the period between October 1, 2017 and October 6, 2017.

(1)     All records reflecting, regarding, or relating to communications regarding information provided on FEMA's website about the federal government's response to Hurricane Maria and/or recovery efforts in Puerto Rico between Defendant and certain enumerated agencies (Item 1). Specifically:

i.      From DHS, Plaintiff requested such records between the Office of the Secretary of DHS or the DHS Office of Public Affairs (OPA) and FEMA or the Executive Office of the President (EOP);

      ii.     From FEMA, Plaintiff requested such records between FEMA and EOP, the Office of the Secretary of DHS, or OPA; and

      iii.    From OMB, Plaintiff requested such records between OMB and other components of EOP or DHS (including FEMA).

(2)    All records reflecting, regarding, or relating to the decision to remove certain statistics related to Puerto Rico's recovery from Hurricane Maria from FEMA's website (Item 2).

(3)    Records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched; any tracking sheets used to track the processing of this request; and, to the extent relevant, any FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches (Item 3).

*See* Exhibits A–C (FOIA requests).

21.    Plaintiff also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) or 5 U.S.C. § 552(a)(4)(A)(ii)(II). *See* Exhibits A–C.

22.    Plaintiff submitted its FOIA requests electronically on October 6, 2017.

23.    On October 11, 2017, Plaintiff received a letter from FEMA acknowledging receipt of the request and advising Plaintiff that its request was "too broad in scope or did not specifically identify the records which you are seeking." *See* Exhibit D. Later that day, Benjamin L. Berwick, one of the undersigned counsel for Plaintiff, spoke by telephone with Kevin Hill, a FOIA Officer for FEMA, regarding the letter. Pursuant to their discussion, Plaintiff agreed to withdraw Item 3 of its request and Defendant confirmed that Items 1 and 2 of the request would proceed to processing. Defendant did not provide an estimate regarding the length of time it would take to process Items 1 and 2 of the request. *See* Exhibit E.

24.    On October 10, 2017, Plaintiff received an email from OMB acknowledging the receipt of the request and advising Plaintiff that the request was being processed. No subsequent information has been provided about the status of Plaintiff's request. *See* Exhibit F.

25.     Plaintiff has received no acknowledgement from DHS that it received Plaintiff's

FOIA request. On October 23, 2017, Plaintiff sent an email to the DHS FOIA email address

requesting acknowledgement of receipt. Plaintiff has not received acknowledgement or any other

update about the status of its request. *See* Exhibit G.

26.     Pursuant to FOIA, within 20 business days of receipt of Plaintiff's request—that

is, by November 6, 2017—Defendants were required to "determine . . . whether to comply with

such request" and to "immediately notify" Plaintiff of "such determination and the reasons

therefor," Plaintiff's right "to seek assistance from the FOIA Public Liaison of the agency" and,

in the case of an adverse determination, Plaintiff's right to appeal. 5 U.S.C. § 552(a)(6)(A)(i).

27.     To date, Defendants have failed to make the required determination and

notifications. Nor have Defendants made a determination regarding Plaintiff's request for a fee

waiver.

## COUNT I
### (Violation of FOIA, 5 U.S.C. § 552)

28.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

29.     Defendants are in violation of FOIA by failing to respond to Plaintiff's request

within the statutorily prescribed time limit and by unlawfully withholding records responsive to

Plaintiff's request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(1)     Order Defendants, by a date certain, to conduct a search that is reasonably likely
         to lead to the discovery of any and all records responsive to Plaintiff's request;

(2)     Order Defendants, by a date certain, to demonstrate that it has conducted an
         adequate search;

(3)     Order Defendants, by a date certain, to produce to Plaintiff any and all non-
         exempt records or portions of records responsive to Plaintiff's request, as well as

65701553_3

a *Vaughn* index of any records or portions of records withheld due to a claim of exemption;

(4)     Enjoin Defendants from improperly withholding records responsive to Plaintiff's request;

(5)     Order Defendants to grant Plaintiff's request for a fee waiver;

(6)     Grant Plaintiff an award of attorney fees and other reasonable litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E);

(7)     Grant Plaintiff such other relief as the Court deems appropriate.

Date: November 13, 2017                    /s/_____
                                           Benjamin L. Berwick (DDC Bar No.
                                           MA0004)
                                           The Protect Democracy Project
                                           10 Ware St.
                                           Cambridge, Massachusetts 02138
                                           ben.berwick@protectdemocracy.org
                                           Phone: (909) 326-2911
                                           Fax: 929-777- 8428

                                           Justin Florence (DC Bar No. 988953)
                                           Jamila G. Benkato*
                                           The Protect Democracy Project
                                           2020 Pennsylvania Ave., NW #163
                                           Washington, DC 20006
                                           jamila.benkato@protectdemocracy.org
                                           Phone: (202) 751-4058
                                           Fax: 929-777- 8428

                                           Joan McPhee  (pro hac vice to be filed)
                                           Helen Gugel (pro hac vice to be filed)
                                           Ropes & Gray LLP
                                           11211 Avenue of the Americas
                                           New York, 10036-8704
                                           joan.mcphee@ropesgray.com
                                           helen.gugel@ropesgray.com
                                           Phone: (212) 596-9500

                                           *Counsel for Plaintiff*

                                           *Not admitted to D.C.; supervised by
                                           licensed member of D.C. Bar*